**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**


**UNITED STATES OF AMERICA**                     **CRIMINAL ACTION**


**VERSUS**                                       **NO: 11-271**


**MARC GUYTON, ET AL.**                          **SECTION: "H"(3)**



## ORDER AND REASONS

Before the Court is a Motion to Suppress Evidence Obtained Through the Illegal Use of GPS Tracking filed by Marc Guyton[1] (R. Doc. 269) and a Motion to Suppress filed by Harry Berry (R. Doc. 274)**.**  For the reasons that follow, the Motions are DENIED.  Because the Court finds that government agents acted with an objectively reasonable good faith belief that their conduct was lawful, suppression is inappropriate.

---

[1]  The Court granted Terrance Henderson and Jose Iturres-Bonilla's motions to adopt, *inter alia*, Guyton's Motion to Suppress.  (*See* R. Docs. 279; 293.)

# BACKGROUND[2]

This case arises from an alleged conspiracy to possess and distribute heroin. From March 14, 2011 through May 26, 2011, the Drug Enforcement Agency ("DEA") monitored Guyton's phone calls, text messages, and location information pursuant to a series of Title III wiretaps. As a result of information obtained through the wiretap, DEA agents suspected that Berry and Henderson supplied Guyton with heroin, which they purchased from Iturres-Bonilla. Agents subsequently applied for and obtained Title III wiretaps on the telephones of Berry and Henderson. During the course of all Title III wiretaps, DEA agents installed Global Position System ("GPS") tracking devices on cars associated with Moving Defendants without obtaining a warrant.[3]

On October 26, 2011, Moving Defendants and other co-defendants were charged by indictment with violations of the Federal Controlled Substances Act. (R. Doc. 1.) A superseding indictment was returned on October 26, 2012. (R. Doc. 289.) On October 10, 2012, Guyton moved to suppress all evidence derived from the GPS tracking devices on his cars as fruits of an illegal

---

[2] Unless otherwise noted, the following factual background is drawn from the Government's opposition to the instant Motions and is not disputed by Guyton, Berry, Henderson, or Iturres-Bonilla (collectively "Moving Defendants"). (*See* R. Doc. 312.)

[3] Guyton challenges the warrantless installation and use of GPS on two separate vehicles. On March 31, 2011, agents installed a GPS on Guyton's black Honda Accord. The device was removed on November 8, 2011, after Guyton was arrested. Agents also installed a GPS on a rental car registered to Trace Galle, Guyton's girlfriend. The device was installed on April 1, 2011, replaced on April 4, 2011, and removed on April 16, 2011.

On June 9, 2011, agents installed a GPS on Berry's gold Chevrolet truck and removed it on August 20, 2011, following his arrest. Agents installed a GPS on Henderson's black GMC Yukon Denali on July 26, 2011. The device was removed on November 8, 2011.

search.  (R. Doc. 269.)  Berry filed a similar Motion on October, 11, 2012.  (R. Doc. 274.)  The

Government opposed both Motions on November 1, 2012. (R. Doc. 312.)  Guyton filed a Reply on

November 28, 2012 (R. Doc. 343) to which the Government filed a Sur-Reply on November 29, 2012

(R. Doc. 351).  With the Court's permission, the parties each filed a supplemental memorandum

regarding the good faith exception to the exclusionary rule.  (*See* R. Docs. 373; 376.)

The Court ordered an evidentiary hearing with respect to the instant Motions in order to

develop more fully the factual record.  (R. Doc. 353.)  The hearing was held on December 19, 2012,

after which the Court took the Motions under advisement.  (R. Doc. 377.)

### LEGAL STANDARD

"The Fourth Amendment protects the 'right of the people to be secure in their persons,

houses, papers, and effects, against unreasonable searches and seizures,' but 'contains no

provision expressly precluding the use of evidence obtained in violation of its commands.'"[4] *Herring*

*v. United States*, 555 U.S. 135, 139 (2009) (quoting *Arizona v. Evans*, 514 U.S. 1, 10 (1995).

Nonetheless, Supreme Court precedent has "establish[ed] an exclusionary rule that, when

applicable, forbids the use of improperly obtained evidence at trial."  *Herring*, 555 U.S. at 139.

"This rule—the exclusionary rule—is a 'prudential doctrine' . . . created by this Court 'to compel

respect for the constitutional guaranty.'"  *Davis v. United States*, 131 S. Ct. 2419, 2426 (2011)

---

[4] "It is beyond dispute that a vehicle is an 'effect' as that term is used in the Amendment."  *United States v. Jones*, 132 S. Ct. 945, 950 (2012) (citing *United States v. Chadwick*, 433 U.S. 1, 12 (1977)).

(citations omitted).  The purpose of the exclusionary rule is "to safeguard Fourth Amendment rights . . . through its deterrent effect."  *United States v. Calandra*, 414 U.S. 338, 348 (1974).

"Generally, on a motion to suppress, the defendant has the burden of proving, by a preponderance of the evidence, that the evidence in question was obtained in violation of her constitutional rights."  *United States v. Guerrero–Barajas*, 240 F.3d 428, 432 (5th Cir. 2001) (citing *United States v. Roch*, 5 F.3d 894, 897 (5th Cir. 1993)); *see also United States v. de la Fuente*, 548 F.2d 528, 533 (5th Cir. 1977).  When the government performs a warrantless search or seizure, however, the burden shifts to the government to prove by a preponderance of the evidence that the search or seizure was constitutional.  *United States v. McKinnon*, 681 F.3d 203, 207 (5th Cir. 2012) (citing *Guerrero–Barajas*, 240 F.3d at 428).

## LAW AND ANALYSIS

Moving Defendants urge this Court to suppress all evidence derived from the warrantless installation and use of GPS devices.  They argue that suppression is warranted in light of *United States v. Jones* because a search warrant was required to lawfully use the GPS devices.  (R. Docs. 269; 274.)  The government counters that suppression is inappropriate for four reasons: (1) The government's actions were lawful under Fifth Circuit law which was not overturned by *United States v. Jones*; (2) Even if the government's actions were unlawful, agents acted in reliance on binding Fifth Circuit precedent and are therefore protected by the good faith exception under *United States v. Davis*; (3) If the good faith exception does not apply, the doctrines of independent

4

source, inevitable discovery, and attenuation preclude the exclusion of any evidence; (4) Moving Defendants Guyton, Iturres-Bonilla, and Berry lack standing to challenge certain searches. (R. Doc. 312.) For the following reasons, the Court finds that government agents acted in good faith and therefore denies the Motions to Suppress. As the good faith issue is dispositive in this case, the Court does not reach the government's alternative arguments.

This Order and Reasons proceeds in three parts. Part I examines the background law applicable in this case. Specifically, it discusses *United States v. Jones*, the lynchpin of Defendants' argument, and *United States v. Davis*, the Supreme Court's latest articulation of the good faith exception. Part II addresses the appropriate scope of the *Davis* opinion and concludes that a narrow reading is inconsistent with both the language of the opinion as well as the Supreme Court's evolving jurisprudence on the exclusionary rule. Part III applies the principles articulated in *Davis* to the facts of the instant case. The Court concludes that government agents acted in good faith and therefore denies the Motions to Suppress.

I.    The Fourth Amendment Backdrop

       *a.* United States v. Jones

While the instant case was pending, the Supreme Court decided *United States v. Jones* and resolved a circuit split over whether the warrantless installation and use of a GPS tracking device

on a suspect's vehicle constitutes a "search" under the Fourth Amendment.[5]  In *Jones*, government

agents installed a GPS tracking device on the undercarriage of the defendant's vehicle while it was

parked in a public place.  *Jones*, 132 S. Ct at 948.  Agents monitored the movement of the vehicle

for 28 days, generating more than 2,000 pages of location data.  *Id.*  Using this information, the

Government obtained a multiple-count indictment.  *Id.*  The defendant moved to suppress

evidence obtained through the GPS device.  *Id.*  The district court granted the motion in part and

the defendant was eventually convicted and sentenced to life in prison.  *Id.*  The D.C. Circuit Court

of Appeals reversed the conviction, holding that the warrantless use of a GPS device violates the

Fourth Amendment.  *Id.* at 949.  The Supreme Court granted certiorari and held that "the

Government's installation of a GPS device on a target's vehicle, and its use of that device to

---

[5] The Seventh and Ninth Circuits held that the installation of a GPS tracker on a vehicle, coupled with the tracking of the vehicle through GPS, did not constitute a search or seizure under the Fourth Amendment. *See generally United States v. Garcia*, 474 F.3d 994 (7th Cir. 2007); *United States v. Pineda–Moreno*, 591 F.3d 1212 (9th Cir. 2010).  The Eighth Circuit held that "when police have reasonable suspicion that a particular vehicle is transporting drugs, a warrant is not required when, while the vehicle is parked in a public place, they install a non-invasive GPS tracking device on it for a reasonable period of time."  *United States v. Marquez*, 605 F.3d 604, 610 (8th Cir. 2010).  In a relatively older case, the Fifth Circuit held that the warrantless installation of a "beeper" to the exterior of a vehicle parked in a public place does not infringe the Fourth Amendment when agents have reasonable suspicion and monitor the vehicle on public roads. *See United States v. Michael*, 645 F.2d 252, 254–56 (5th Cir. 1981); *accord United States v. Hernandez,* 647 F.3d 216 (5th Cir. 2011).  In an unpublished opinion, the Eleventh Circuit, interpreting *Michael*, held that "the placement of an electronic tracking device on the exterior of the defendant's vehicle when it was parked on a public parking lot did not violate his Fourth Amendment rights."  *United States v. Smith*, 387 F. App'x 918, 920–21 (11th Cir. 2010) (per curiam) (citing *Michael*, 645 F.2d at 255–56).  In August 2010, the D.C. Circuit Court of Appeals challenged the consensus by ruling that the use of GPS tracking on a suspect's vehicle for twenty-eight days qualified as a Fourth Amendment search.  *See United States v. Maynard*, 615 F.3d 544, 555 (D.C. Cir. 2010).

monitor the vehicle's movements, constitutes a 'search'" under the Fourth Amendment. *Id.*

Despite this clear holding, *Jones* did not address several important issues.[6]  The Court did not decide whether the government must obtain a warrant to install and use a GPS tracking device, and if not, what quantum of suspicion is required (*e.g.*, reasonable suspicion or probable cause). *Id.* at 954.  The Court also did not address whether, if the Fourth Amendment was violated, the exclusionary rule would require suppression and if so what evidence must be suppressed. *Id.* at 964 n.11.  This Court need not address these questions today, since, as explained more fully *infra*, suppression is not warranted because the good faith exception to the exclusionary rule is applicable.[7]

---

[6] Many courts have acknowledged the issues left unresolved by the *Jones* Court. *See, e.g., United States v. Lopez*, No. 10–cr-67 (GMS), 2012 WL 3930317, at *8 (D. Del. Sept. 10, 2012); *United States v. Rose*, No. 11–11062–NMG., 2012 WL 4215868, at *3 (D. Mass. Sept. 14, 2012); *United States v. Katzin*, No. 11–226, 2012 WL 1646894, at *4 (E.D. Pa. May 9, 2012); *United States v. Robinson*, No. S2–4:11CR00361 AGF, 2012 WL 4893643, at *10 (E.D. Mo. Oct. 15, 2012); *cf. United States v. Illescas*, No. 2:11–CR-492–RDP–HGD, 2012 WL 1946580, at *3 (N.D. Ala. May 30, 2012); *United States v. Barbary*, No. 12–60011–CR., 2012 WL 4839127, at *2 (S.D. Fla. Sept. 6, 2012).  Other courts, however, erroneously assume (in this Court's opinion) that the warrantless placement and use of a GPS tracker on a suspect's vehicle is *per se* unreasonable under *Jones*. *See United States v. Oladosu*, No. 10–056–01 S., 2012 WL 3642851, at *4 (D.  R.I. Aug. 21, 2012) ("The government now acknowledges—as it must—that the use of the GPS in this case  was a violation of the Fourth Amendment warrant requirement as held in *Jones*"); *United States v. Lujan*, No. 1:11CR11–SA., 2012 WL 2861546, at *4 (N.D. Miss. July 11, 2012) ("[T]he placement and use of a GPS tracker in this instance was *per se* unreasonable without a warrant under the Fourth Amendment."); *cf. United States v. Lee*, 862 F. Supp. 2d 560, 564 (E.D. Ky. 2012); *United States v. Leon*, 856 F. Supp. 2d 1188, 1191 (D. Haw. 2012).

[7] Judicial restraint compels federal courts to abstain from addressing constitutional issues unless adjudication is unavoidable. *Jean v. Nelson*, 472 U.S. 846, 854 (1985).  Accordingly, district courts routinely decline to address the open questions in *Jones* when the good faith exception to the exclusionary rule is applicable. *See, e.g.*, *Barbary*, 2012 WL 4839127 at *2; *Lopez*, 2012 WL 3930317 at *8; *Illescas*, 2012 WL 1946580 at *3.

*b.* United States v. Davis

In *Davis*, the defendant was arrested during a routine traffic stop and placed in the back of a patrol car. 131 S. Ct. at 2425. Officers searched the passenger compartment of the vehicle and found a revolver inside the defendant's jacket pocket. *Id.* The defendant was indicted for possession of a firearm by a convicted felon and subsequently moved to suppress the revolver. *Id.* at 2425–26. The court denied the motion and the defendant was convicted. *Id.* at 2426. Two years later, while the defendant's appeal was pending, the Supreme Court decided *Arizona v. Gant*, 556 U.S. 332 (2009), which held that "[p]olice may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." 556 U.S. at 351. Applying *Gant*, the Court of Appeals held that the vehicle search incident to the defendant's arrest violated his Fourth Amendment rights but declined to suppress the evidence. *Davis*, 131 S. Ct. at 2426. The Supreme Court affirmed, finding that "searches conducted in objectively reasonable reliance on binding appellate precedent are not subject to the exclusionary rule." *Id.* at 2423–24.

II.   *Davis* and the Good Faith Exception to the Exclusionary Rule

Following the *Jones* decision, courts across the country have addressed the propriety of applying *Davis* to cases in which GPS monitoring began before *Jones* was decided. These decisions may be generally divided in two groups: (1) circuits with pre-*Jones* binding appellate precedent

sanctioning the warrantless installation and use of GPS devices, and (2) circuits with no such binding appellate authority. In the former circuits, courts have had no problem applying *Davis* to deny the suppression of evidence.[8] As to cases in the latter circuits, however, district courts are sharply divided. Some courts read *Davis* narrowly and hold that the good faith exception is inapplicable in the absence of binding appellate precedent.[9] Other courts interpret *Davis* to mandate a case-by-case inquiry in which the relevant inquiry is whether police act with an objectively reasonable good faith belief that their conduct is lawful.[10] This Court believes that the interpretation adopted by the former line of cases is inconsistent with both the language in *Davis* as well as the Supreme Court's evolving jurisprudence on the good faith exception. As explained

---

[8] *See, e.g., United States v. Smith*, No. 2:11–cr–00058–GMN–CWH, 2012 WL 4898652, at **4–5 (D. Nev. Oct. 15, 2012) (binding appellate precedent in the Ninth Circuit); *United States v. Aguilar*, No. 4:11–cr–298–BLW., 2012 WL 1600276, at **1–2 (D. Idaho May 7, 2012) (same); *United States v. Amaya*, 853 F. Supp. 2d 818, 825–31 (N.D. Iowa 2012) (binding appellate precedent in the Eight Circuit); *United States v. Barraza-Maldonado*, No. 12–CR–0054 (PJS/SER)., 2012 WL 2952312, at **6–8 (D. Minn. July 19, 2012) (same); *United States v. Nelson*, No. CR612–005., 2012 WL 3052914, at **2–3 (S.D. Ga. July 25, 2012) (binding appellate precedent in the Eleventh Circuit); *United States v. Shelburne*, No. 3:11–cr–156–S., 2012 WL 2344457, at **3–6 (W.D. Ky. June 20, 2012) (applying the binding appellate precedent of the Seventh Circuit since the alleged wrongdoing occurred within that Circuit).

[9] These cases generally argue that *Davis*' "binding appellate precedent" language creates a strict limitation on the good faith exception. *See, e.g., Katzin*, 2012 WL 1646894 at **7–10; *Lee*, 862 F. Supp. 2d at 567–71; *Lujan*, 2012 WL 2861546 at **2–3; *Robinson*, 2012 WL 4893643 at ** 12–15; *United States v. Ortiz*, No. 11–251–08., 2012 WL 2951391, at **19–25 (E.D. Pa. July 20, 2012).

[10] *See, e.g., Oladosu*, 2012 WL 3642851 at **5–10; *United States v. Baez*, No. 10–10275–DPW., 2012 WL 2914318, at **5–8 (D. Mass. July 16, 2012); *Leon*, 856 F. Supp. 2d at 1191–95; *Rose*, 2012 WL 4215868 at **3–6; *Lopez*, 2012 WL 3930317 at **8–11. *Cf. United States v. Hardrick*, No. 10–202., 2012 WL 4883666, at **5–6 (E.D. La. Oct. 15, 2012).

more fully *infra*, this Court believes that a case-by-case approach is more appropriate and therefore focuses on the "'flagrancy of the police misconduct' at issue." *Cf. Davis*, 131 S. Ct. at 2426 (quoting *Leon*, 468 U.S. at 909).

### i. Development of the Good Faith Exception to the Exclusionary Rule

The good faith exception to the exclusionary rule was first articulated in *United States v. Leon*, 468 U.S. 897 (1984). The issue before the Court was whether to suppress evidence obtained by officers acting in reasonable reliance on a search warrant ultimately found to be unsupported by probable cause. *Id.* at 900. In addressing this issue, the Court weighed the "substantial social costs exacted by the exclusionary rule" against the potential to deter police misconduct. *Id.* at 907–09. The Court found that this balancing test weighs against suppression when officers act with an "objectively reasonable belief that their conduct did not violate the Fourth Amendment." *Leon*, 468 U.S. at 918–19. This is particularly true when an officer "acting with objective good faith" lawfully executes a search warrant issued by a neutral judge or magistrate. *Id.* at 920. Accordingly, the Court concluded that the "marginal or nonexistent benefits produced by suppressing evidence" would not "justify the substantial costs of exclusion." *Id.* at 922.

In accordance with this focus on deterring police misconduct, "the Supreme Court has flexibly applied the good-faith exception embraced in *Leon*" to situations outside of the search warrant context. *Hardrick*, 2012 WL 4883666 at *5 (internal citations omitted). For example, in *Illinois v. Krull*, 480 U.S. 340 (1987), the Court "extended the good-faith exception to searches

10

conducted in reasonable reliance on subsequently invalidated statutes." *Davis*, 131 S. Ct. at 2428

(citing *Krull*, 480 U.S. at 349–50). And in *Arizona v. Evans*, 514 U.S. 1 (1995), the Court applied the

good faith exception "where the police reasonably relied on erroneous information concerning an

arrest warrant in a database maintained by judicial employees." *Davis*, 131 S. Ct. at 2428 (citing

*Evans*, 514 U.S. at 14). *Herring v. United States* extended *Evans* "where *police* employees erred in

maintaining records in a warrant database," emphasizing that isolated police negligence does not

warrant exclusion. *Davis*, 131 S. Ct. at 2428 (citing *Herring*, 555 U.S. at 137) (emphasis in original).

Finally, as discussed *infra*, the *Davis* Court applied the good faith exception where police acted in

objective and reasonable reliance on binding appellate precedent. *Davis*, 131 S. Ct. at 2423–24.

In reaching its decision, the *Herring* Court provided a succinct summary of the Supreme

Court's good faith jurisprudence. The Court emphasized that application of the exclusionary rule

turns on "the culpability of the police and the potential of exclusion to deter wrongful police

conduct." *Herring*, 555 U.S. at 137. Thus, "[t]he extent to which the exclusionary rule is justified

. . . varies with the culpability of the law enforcement conduct." *Id.* at 143. "Nonrecurring and

attenuated negligence" ordinarily will not warrant suppression. *Id.* at 144. Instead, "police

conduct must be sufficiently *deliberate* that exclusion can meaningfully deter it, and sufficiently

*culpable* that such deterrence is worth the price paid by the justice system." *Id.* (emphasis added).

*ii. The Proper Scope of* Davis

To understand and apply *Davis*, it is necessary to view the opinion as a logical extension of

11

the Supreme Court's jurisprudence on the good faith exception to the exclusionary rule.  *See Oladosu*, 2012 WL 3642851 at *6.  Much like the Court in *Herring*, the *Davis* Court discussed the precepts of law undergirding the exclusionary rule before applying those precepts to the facts.  The Court began by noting that a long line of precedent has established that the purpose of the exclusionary rule is not to redress individual injury but rather to "deter future Fourth Amendment Violations."  *Davis*, 131 S. Ct. at 2426 (internal citations omitted).  Accordingly, "[f]or exclusion to be appropriate, the deterrence benefits of suppression must outweigh its heavy costs."  *Id.* at 2427.  The Court found that *Leon* and its progeny counsel that the deterrence benefits of exclusion vary with the culpability of law enforcement conduct:

> When the police exhibit "deliberate," "reckless," or "grossly negligent" disregard for Fourth Amendment rights, the deterrent value of exclusion is strong and tends to outweigh the resulting costs.  But when the police act with an objectively "reasonable good-faith belief" that their conduct is lawful, or when their conduct involves only simple, "isolated" negligence, the "'deterrence rationale loses much of its force,'" and exclusion cannot "pay its way."

*Id.* (internal citations omitted).

Under this standard, the *Davis* Court easily concluded that suppression is not warranted "when the police conduct a search in objectively reasonable reliance on binding judicial precedent."  *Id.* at 2428–29.  Consistent with the Court's exclusionary-rule precedents, the *Davis* Court emphasized that the "acknowledged absence of police culpability doom[ed] [the

defendant's] claim." *Id.* at 2428. In other words, because the officers in *Davis* did not violate the defendant's Fourth Amendment rights "deliberately, recklessly, or with gross negligence," the "harsh sanction of exclusion" was not warranted. *Id.* "Indeed, in 27 years of practice under *Leon*'s good-faith exception, we have 'never applied' the exclusionary rule to suppress evidence obtained as a result of nonculpable, innocent police conduct." *Id.* at 2429 (quoting *Herring*, 555 U.S. at 144). The Court concluded by "reaffirm[ing]" the basic insight of the *Leon* line of cases that "exclusion 'should not be applied to deter objectively reasonable law enforcement.'" *Id.* (citing *Leon*, 468 U.S. at 919).

Some courts argue, as do Moving Defendants, that *Davis* be read narrowly to prevent suppression only where officers reasonably rely on binding appellate precedent. This inflexible approach is untenable for three reasons. First, and most importantly, a rigid interpretation of *Davis* "does not jibe with the majority's pronouncement that suppression is required only where an officer acts culpably." *Rose*, 2012 WL 4215868 at *5. As Justice Breyer and Justice Ginsburg note in dissent, "an officer who conducts a search that he believes complies with the Constitution but which, it ultimately turns out, falls just outside of the Fourth Amendment's bounds is no more culpable than an officer who follows erroneous 'binding precedent.'" *Davis*, 131 S. Ct. at 2339 (Breyer, J., dissenting). "Thus, if the Court means what it now says, if it would place determinative weight upon the culpability of an individual officer's conduct," the relevant inquiry is not whether the precedent upon which officers rely is legally binding but whether it was objectively reasonable

13

to rely on that precedent. *See id.*

Second, a narrow reading of *Davis* does not comport with the Court's previous good faith jurisprudence. Regardless of the factual circumstances in which the good faith exception has been applied, the Court has consistently required that "the deterrence benefits of suppression . . . outweigh its heavy costs." *Id.* at 2427; *see further Leon,* 468 U.S. at 922 ("We conclude that the marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion."); *Krull*, 480 U.S. at 351–52 ("When we indulge in such weighing, we are convinced that applying the exclusionary rule in this context is unjustified."); *Herring*, 555 U.S. at 702 ("[W]e conclude that when police mistakes are the result of negligence such as that described here . . . any marginal deterrence does not 'pay its way.'") (quoting *Leon*, 468 U.S. at 907–08 n.6). Thus, *Leon* and its progeny require that courts weigh the deterrence benefits of suppression against the costs of exclusion in each case. Interpreting *Davis* to require a *per se* finding of unreasonableness when officers do not rely on legally binding appellate precedent is inconsistent with this mandate.

Third, the Court appeared to anticipate that the principles of *Davis*—with a focus on police culpability—would be worked out by lower courts. *See Oladosu*, 2012 WL 3642851 at *6; *Baez*, 2012 WL 2914318 at *6; *Leon*, 856 F. Supp. 2d at 1194. In her concurrence, Justice Sotomayor noted that the majority opinion does not address whether the exclusionary rule applies "when the

14

governing law is *unsettled*." *Davis*, 131 S. Ct. at 2436 (Sotomayor, J., concurring) (emphasis added). Justice Breyer noted in dissent that the majority's mandate that courts focus on police culpability will affect "a very large number of cases, potentially many thousands each year." *Id.* at 2439–40 (Breyer, J., dissenting). Ultimately, "[t]he Supreme Court in *Davis* . . . engaged in . . . a cost-benefit analysis and effectively directed lower courts to do likewise in the developing case law." *Baez*, 2012 WL 2914318 at *8.

For the foregoing reasons, this Court interprets *Davis* to require that decisions regarding the suppression of evidence be made on a case-by-case basis. The "absence of police culpability" is dispositive: "when police act with an objectively 'reasonable good-faith belief' that their conduct is lawful," exclusion is inappropriate. *Davis*, 131 S. Ct. at 2427–28 (quoting *Leon*, 468 U.S. at 909).

III.    Applying *Davis*

The Court now applies the principles articulated in *Davis* to determine whether to suppress evidence derived from the warrantless placement and use of GPS devices on Moving Defendants' vehicles. Initially, the Court must determine whether government agents acted with a good faith belief that their conduct was lawful. If so, the Court must decide whether that belief was objectively reasonable. Because the Court answers both questions affirmatively, the Motions to Suppress are denied.

   *a. Whether Government Agents Acted in Good Faith*

The Court first inquires whether government agents believed in good faith that the

15

warrantless placement and use of GPS devices was lawful.  To aid in this determination, the Court ordered an evidentiary hearing at which the Government called Kenneth Solek—a DEA agent of approximately seventeen years—as a witness.  (*See* Transcript of Evidentiary Hearing at 14: 2–3, *U.S.A. v. Guyton* (No. 11-271) (Dec. 19, 2012)). Agent Solek has worked as supervisor of the New Orleans HIDTA group of the DEA for the last five years.  (*Id.* at 14: 1–5.) In this capacity, Agent Solek's primary responsibility is to supervise investigations, such as the investigation of Moving Defendants, performed by the HIDTA group. (*Id.* at 14: 8–10.) This responsibility includes the "final say" regarding the decision to employ GPS tracking devices.  (*Id.* at 99: 7–13.)

Agent Solek testified at the evidentiary hearing that prior to the Supreme Court's decision in *Jones*, he did not believe a search warrant was necessary to install a tracking device to the exterior of a vehicle provided that, as in this case, the installation occurred in a public place and was only monitored on public thoroughfares and that agents have reasonable suspicion or probable cause.  (*Id*. at 16: 11–20.)  Agent Solek testified that the decision to use GPS tracking devices in this case without seeking a warrant was based primarily on his own past experience  as well as DEA custom in the Eastern District of Louisiana.  (*Id.* at 43–44: 22–7.)  Agent Solek believed that he and his agents acted lawfully based on his prior interpretation of the DEA's policy manual regarding the use of electronic tracking devices,[11] previous conversations with DEA supervisors and

---

[11] Guyton contends that Agent Solek and his team failed to comply with Sections A(3) and C of the DEA Policy Manual.  Agent Solek testified, however, that it was his understanding based on custom and past practice that the United States Attorney's Office for the Eastern District of Louisiana did not require strict

others within the DEA, and previous investigations—of which the U.S. Attorney's office and local DEA counsel were aware—in which agents installed and used tracking devices without obtaining a warrant.  (*See id.*at 69: 9–16; 42: 11–21; 102–03: 14–5.)  Agent Solek further testified that he stays abreast of changes in the law relative to how agents may act in the field  (*id.* at 14: 13–24) and that he believes that he was in compliance with the law in this Circuit at all times during the investigation (*id.* at 107: 9–13).   Based on the foregoing, the Court finds that Agent Solek and his team believed in good faith that their conduct was lawful.

  *b. Whether the Good Faith Belief of Government Agents was Objectively Reasonable*

  Having determined that government agents believed in good faith that their conduct was lawful, the Court next inquires whether that belief was objectively reasonable.[12]  The parties agree,

---

compliance with Section A(3).  (Transcript of Evidentiary Hearing at 19–21: 7–6; 61–62: 21–2; 67–68: 22–5.)  For similar reasons, Agent Solek testified that  he interpreted Section C to apply only to those situations in which a warrant was required to monitor.  Since Agent Solek did not think a warrant was necessary in this case, he believed Section C to be inapplicable.  (*See id.* at 53–54: 24–18.)

  Agent Solek did not directly confer with an attorney regarding his interpretation of the DEA Policy Manual.  (*Id.* at 54: 19–22; 68: 6–17)  Nonetheless, given Agent Solek's testimony and after examining the text of the Policy itself, the Court finds plausible Agent Solek's interpretation.

  [12] The Court does not doubt that Agent Solek and his team were well-meaning.  "But legally, the good-faith exception does not apply whenever police officers believe they are following the law."  *Lee*, 862 F. Supp. 2d at 568.  Rather, as explained *supra*, the good faith exception only protects conduct that is objectively reasonable.  *See Krull*, 480 U.S. at 355 ("As we emphasized in *Leon*, the standard of reasonableness we adopt is an objective one; the standard does not turn on the subjective good faith of individual officers.") (citations omitted); *Herring*, 555 U.S. at 144 ("We have already held that 'our good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal' in light of 'all of the circumstances.'") (quoting *Leon*, 468 U.S. at 922 n.23).

as does this Court, that the Fifth Circuit's en banc decision in *United States v. Michael* weighs heavily in this determination. However, they disagree as to the proper scope of *Michael*. The government contends that *Michael* permitted the installation of a tracking device on a vehicle in a public place without a search warrant if the officers had reasonable suspicion and the vehicle was monitored on public roads (R. Doc. 372.) Guyton counters that *Michael* is inapposite. Specifically, Guyton argues that *Michael* only applies to the warrantless installation and use of "beepers"—it does not address the Fourth Amendment implications with respect to modern tracking devices, such as GPS. (R. Doc. 337.) The government counters that the distinction between beepers and GPS is without "practical difference." (R. Doc. 312.) Further, even if this Court finds that *Michael* does not control, the Government contends that the good faith exception is still viable, because it was reasonable for government agents to believe that *Michael* was controlling with respect to *all* vehicle tracking devices. (R. Doc. 347.)

This Court need not decide the proper scope of *Michael*, i.e. whether *Michael* is legally controlling in this case. Rather, as explained *supra*, the relevant inquiry under *Davis* and the Supreme Court's good faith precedent is whether law enforcement act with an objectively reasonable belief that their conduct is lawful. Modified to fit the contours of this case, the dispositive question this Court addresses is whether it is objectively reasonable to believe that *Michael* permitted the warrantless installation of GPS devices. In order to answer this question, the Court is obliged to examine *Michael* in some detail.

In *Michael*, federal agents conducted surveillance on a vehicle driven by the defendant who was suspected of transporting chemicals used in the manufacture of methylenedioxyamphetamine ("MDA"). *Michael*, 645 F.3d at 255. The agents followed the vehicle until the defendant parked near a restaurant. *Id.* While the defendant was inside the restaurant, an agent installed a "beeper" to the exterior of the vehicle. *Id.* The agents did not obtain a warrant prior to installing the beeper. *Id.* Subsequent monitoring of the beeper led agents to apply for and obtain a search warrant for a certain warehouse. *Id.* Agents executed the warrant and seized chemicals, equipment, and quantities of MDA. *Id.* The defendant moved to suppress the evidence as fruits of an illegal search. *Id.*

The en banc court in *Michael* began by assuming, without deciding, that the installation of the beeper constituted a "search" under the Fourth Amendment. *Id.* at 256. The court then balanced the extent to which the beeper monitoring infringed and intruded upon the defendant's privacy against the government's interest in eliminating illegal drug manufacture. The court first recognized that an individual has a lower expectation of privacy in his automobile than in other property. *Id.* at 257. In this case, the fact that the installation of the beeper occurred "in plain view, in a public place" and that monitoring occurred while the vehicle traversed "public roads during the daytime" was significant. *Id.* Next, the court found that "the intrusion occasioned by the *placement* of the beeper was not great," noting that the defendant was not detained or questioned and that the interior of the vehicle was not searched. *Id.* at 258 (emphasis added). As

19

to the intrusion occasioned by the beeper monitoring itself, the court again emphasized that the vehicle traveled public roads and was exposed to public view. *Id.* Lastly, the court recognized the government's interest in "discovering and eliminating clandestine laboratory operations." *Id.* The court ultimately concluded that the warrantless installation of a beeper to the exterior of a vehicle parked in a public place does not infringe the Fourth Amendment where agents possess reasonable suspicion and monitor the vehicle on public thoroughfares only. *Id.* at 256–57.

The Court now applies *Michael* to the facts in this case. First, the Court analyzes whether government agents complied with each component of the *Michael* holding. Next, the Court addresses the broader question of whether it is objectively reasonable to believe that *Michael* sanctioned the warrantless installation and use of GPS in this case.

### i. Whether Government Agents Complied with Michael

*Michael* provides that the warrantless installation and use of a beeper does not violate the Fourth Amendment if the following requirements are met: (1) The beeper is installed on the exterior of the vehicle while parked in a public place; (2) The vehicle is only monitored while traveling on public thoroughfares; (3) Agents possess reasonable suspicion that the vehicle is used to facilitate illicit activity. The Court finds that these conditions are satisfied.

All four GPS devices in this case were installed to the exterior of the vehicles while parked in a public place. (R. Doc. 312; Transcript of Evidentiary Hearing at 35: 6–9 ) Moreover, Agent

Solek testified that vehicles were only monitored *by agents* while traveling public thoroughfares.[13] (Transcript of Evidentiary Hearing at 57: 23–25; 59–60: 21–1.)  Finally, the Court finds that the record contains ample evidence to support a finding of reasonable suspicion.

*ii. Whether it was Objectively Reasonable to Believe that* Michael *Controls*

Having established that the government complied with *Michael*, the Court now addresses the broader issue of whether it was objectively reasonable to believe that *Michael* governed the warrantless placement and use of modern vehicle tracking devices—including the GPS devices used in this case—prior to the Supreme Court's decision in *Jones*.  As the Court answers this question affirmatively, the good-faith exception to the exclusionary rule applies.

 The majority opinion in *Michael* refers to the electronic tracking device in *Michael* as a "beeper" but does not discuss the attributes of the beeper or the extent to which it monitored the defendant's movements. A dissenting opinion authored by Judge Tate, however, sheds some light on these issues.  Judge Tate noted that "the attachment of a beeper to an automobile permits electronic tracking of its movements twenty-four hours per day indefinitely.  The automobile is tracked wherever it goes."  *Id.* at 262 (Tate, J., dissenting).  Thus *Michael* may fairly be read to authorize the warrantless installation of more modern tracking devices, such as the GPS devices

---

[13] The Court notes the distinction between computer monitoring and human monitoring. While data from the GPS was constantly sent to (depending on the frequency of the ping) and logged in DEA software, the data could only be accessed by logging into the software.  (*See* Transcript of Evidentiary Hearing at 52: 1–10.)

used in this case.  That the *Michael* opinions refer to the tracking device as a "beeper" does not necessarily suggest that the court intended to draw a distinction between beepers and GPS—rather, the difference in terminology is more fairly attributed to the fact that *Michael* was decided more than thirty years ago.

The Court's conclusion is buttressed by the fact that, at the time the GPS devices were installed in this case, there was no authority in the Fifth Circuit which held that *Michael* did not apply to modern vehicle tracking devices.[14]  In fact, many courts have found that *Michael* covers

---

[14] The Fifth Circuit's opinion in *United States v. Hernandez* suggests, but does not hold, that the Fifth Circuit distinguishes between the beeper used in *Michael* and modern tracking devices.  In *Hernandez*, government agents installed a GPS tracking device to the undercarriage of a car with a magnet.  647 F.3d at 218.  The court described the GPS as "unsophisticated" and noted that it was only accurate to 50 yards but could neither relay a precise address nor broadcast a signal in an enclosed area.  *Id.*  Moreover, the device did not allow continuous monitoring—rather, it emitted a "ping" at intervals ranging from 15 minutes to two hours.  *Id.*  Relying on *Michael*, the Court held that the warrantless installation and use of the GPS in this case was not an unreasonable search under the Fourth Amendment.  *Id.* at 220.  The court described the tracking device in *Michael* as a "broadcasting beeper," which the court found similar to the GPS device used in *Hernandez*.  *Id.*  In reaching its holding, the Court expressed "theoretical concern about continuous GPS monitoring," suggesting that the outcome in *Hernandez* may have been different if the GPS permitted more extensive monitoring.  *Id.* at 221.

*Hernandez* does not effect the analysis in the instant case for multiple reasons.  First, and most importantly, *Hernandez* did not hold that *Michael* does not apply to GPS devices that permit extensive monitoring.  In fact, the court expressly cautioned that its opinion does not address "whether the government's use of a top-of-the-line GPS . . . capable of continuous, precise surveillance, would constitute a search."  *Id.* at 221.  Thus, the *Hernandez* Court's "theoretical concern" is mere dicta.  Second, the *Hernandez* Court's insinuation that the beeper used in *Michael* did not allow for extensive monitoring is simply not supported by the *Michael* opinion itself.  As discussed *supra*, the majority opinion described the tracking device as a "beeper" but did not discuss the device's attributes or capabilities.  In fact, Judge Tate's dissent suggests that the beeper in *Michael* provided the same kind of extensive monitoring as modern GPS devices.  Third, *Hernandez* was decided subsequent to the installation of all GPS devices in this case except for that installed on Henderson's Yukon Denali.

the warrantless installation and use of GPS.  *See, e.g.*, *Smith*, 387 F. App'x at 920–21; *Rosas-Illescas*, 2012 WL 1946580 at **5–6; *Katzin*, 2012 WL 1646894 at *7 n.11; *cf. Lewis*, No. 12–60011–CR, 2012 WL 4838889 (S.D. Fla. Oct. 10, 2012); *Nelso*n, 2012 WL 3052914.  *But see Lujan,* 2012 WL 2861546 at *3; *Ortiz*, 2012 WL 2951391 at *20.

Furthermore, the expert testimony elicited at the evidentiary hearing did not reveal any information of which a reasonably well-trained officer would be aware that would cause the officer to doubt that *Michael* also applies to the warrantless installation and use of GPS.  (*See* Transcript of Evidentiary Hearing at 146–47: 4–19; 164–65: 23–5.) In fact, the experts in this case often disagreed over the extent to which beeper and GPS technology differ.  (*See generally id.* at 155–64.)

In sum, from the perspective of law enforcement, the two technologies are functionally equivalent. (*See id.* at 167: 5–9.)  Requiring law enforcement to make overly technical distinctions between substantially similar technologies at a time when the Fifth Circuit made no such distinctions would impede an officer's ability "to fulfill [his or her] crime detection and public safety responsibilities."  *Cf. Davis*, 131 S. Ct. at 2429.

## CONCLUSION

In the final analysis, this Court concludes, as did the Supreme Court in *Davis*, that the "absence of police culpability dooms" Moving Defendants' claims.  *Cf. Davis*, 131 S. Ct. at 2428. Government agents did not exhibit the type of deliberate, reckless, or grossly negligent behavior

that warrants the prophylaxis of suppression.  Where, as here, law enforcement act with an objectively reasonable good faith believe that their conduct is lawful, the "harsh sanction of exclusion" is inappropriate.  *See id.* at 2428.  Therefore, for the reasons previously stated, the Motions to Suppress are denied.

New Orleans, Louisiana, on this 3rd day of January, 2013.

JANE TRICHE MILAZZO
**UNITED STATES DISTRICT JUDGE**