UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | **NO: 11-271** |
| **JOSE ITURRES-BONILLA** | **SECTION: "H"** |

## ORDER AND REASONS

Before the Court is Defendant Jose Iturres-Bonilla's Motion for Compassionate Release (Doc. 1719). For the following reasons, the Motion is **DENIED**.

## BACKGROUND

Defendant Jose Iturres-Bonilla is currently serving a 235-month sentence for conspiracy to possess with intent to distribute one kilogram or more of heroin in violation of 21 U.S.C. § 841(a)(1) and use of a communication facility in violation of 21 U.S.C. § 843(b). Defendant has moved for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) on several grounds, including his health, family circumstances, and disparity in sentencing. Defendant also seeks the appointment of counsel. This Court will consider each argument in turn.

1

## LEGAL STANDARD

"The district court's jurisdiction to correct or modify a defendant's sentence is limited to those specific circumstances enumerated by Congress in 18 U.S.C. § 3582."[1] Section 3582(c), as amended by the First Step Act, states in relevant part that:

> The court may not modify a term of imprisonment once it has been imposed except that—(1) in any case—(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction; or
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

---

[1] United States v. Garcia, 606 F.3d 209, 212 (5th Cir. 2010).

> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

The statute does not define "extraordinary and compelling reasons." Rather, the Sentencing Commission was directed by Congress to promulgate policy statements describing what should be considered an extraordinary or compelling reason for sentence modification. The Sentencing Commission's policy statement sets forth factors based on a Defendant's health, age, or family circumstance.[2] The policy statement states that, provided a defendant is not a danger to the community, extraordinary and compelling reasons exist under the following circumstances:

> (A) Medical Condition of the Defendant.—
>
> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (ii) The defendant is—
>
> (I) suffering from a serious physical or medical condition,
>
> (II) suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (B) Age of the Defendant.--The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or

---

[2] U.S.S.G. 1B1.13.

mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C) Family Circumstances.—

(i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

(ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D) Other Reasons.--As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).[3]

The policy statements have not, however, been amended since the enactment of the First Step Act, "and consequently, a portion of the policy statement now squarely contradicts 18 U.S.C. § 3582(c)(1)(A) as amended."[4] In recognizing this discrepancy,

> [m]any courts have concluded that this discrepancy means that the Sentencing Commission does not have a policy position applicable to motions for compassionate release filed by defendants pursuant to the First Step Act. Accordingly, other district courts have found that they have discretion to determine what constitutes an "extraordinary and compelling reason[ ]" on a case by case basis, and reliance on the policy statement may be helpful, but not dispositive.[5]

Indeed, the Fifth Circuit has joined the Second, Fourth, Sixth, Seventh, and Tenth Circuits in holding that "neither the [Sentencing Commission's] policy

---

[3] U.S.S.G. 1B1.13.
[4] *Id.*
[5] *Id.*

4

statement nor the commentary to it binds a district court addressing a prisoner's own motion under § 3582."[6] Accordingly, this Court is not constrained by the Commission's policy statement in considering whether Defendant has presented an extraordinary and compelling reason for modification of his sentence. It is "bound only by § 3582(c)(1)(A)(i) and, as always, the sentencing factors in § 3553(a)."[7]

"Having concluded that the First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release, the question remains whether the extraordinary and compelling reasons cited by [Defendant] warrant compassionate release."[8] The Fifth Circuit has recognized that district courts may consider whether "nonretroactive sentencing changes . . . , either alone or in conjunction with any other applicable considerations, constitute extraordinary and compelling reasons for a reduction in sentence."[9] Other courts have also found it appropriate to consider whether a sentence modification is warranted in light of the disparity between a defendant's actual sentence and the sentence that

---

[6] United States v. Shkambi, 993 F.3d 388, 393 (5th Cir. 2021). *See e.g.,* United States v. McGee, 992 F.3d 1035, 1050 (10th Cir. 2021) ("[T]he Sentencing Commission's existing policy statement is applicable only to motions for sentence reductions filed by the Director of the BOP, and not to motions filed directly by defendants."); United States v. McCoy, 981 F.3d 271, 281 (4th Cir. 2020) ("By its plain terms, in short, § 1B1.13 does not apply to defendant-filed motions under § 3582(c)(1)(A)"); United States v. Brooker, 976 F.3d 228, 237 (2d Cir. 2020) ("[T]he First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release. Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion.").

[7] *Shkambi*, 993 F.3d at 393.

[8] United States v. Price, 496 F. Supp. 3d 83, 87 (D.D.C. 2020).

[9] United States v. Cooper, 996 F.3d 283, 289 (5th Cir. 2021).

5

he would receive if the First Step Act applied, but they have counseled that such a disparity is insufficient on its own to warrant relief.[10] "[I]t can only be the combination of such a sentence and a defendant's unique circumstances that constitute extraordinary and compelling reasons.'"[11]

## LAW AND ANALYSIS

### A. Appointment of Counsel

A defendant in a § 3582(c) motion "does not have a statutory or constitutional right to appointment of counsel."[12] However, the Court may appoint counsel in the interest of justice.[13] The interest of justice does not require the appointment of counsel where a "defendant's motion does not involve complicated or unresolved issues or where a defendant proves capable of representing himself pro se."[14] Here, the issues of Defendant's compassionate release are not particularly complicated, and Defendant has filed more than 250 pages of briefing, exhibits, and character letters in support thereof.[15] Accordingly, Defendant has proven capable of representing himself *pro se*, and the appointment of counsel is not warranted.

---

[10] United States v. Owens, 996 F.3d 755, 764 (6th Cir. 2021); *McGee*, 992 F.3d at 1050.

[11] *McGee*, 992 F.3d at 1048. *See Owens*, 996 F.3d at 763 ("In accordance with our holding that, in making an individualized determination about whether extraordinary and compelling reasons merit compassionate release, a district court may include, along with other factors, the disparity between a defendant's actual sentence and the sentence that he would receive if the First Step Act applied, we remand to the district court for further proceedings."); *McCoy*, 981 F.3d at 286 ("[W]e note that in granting compassionate release, the district courts relied not only on the defendants' § 924(c) sentences but on full consideration of the defendants' individual circumstances.").

[12] United States v. Wilfred, No. CR 07-351, 2020 WL 4698993, at *1 (E.D. La. Aug. 13, 2020).

[13] *Id.*

[14] *Id.*

[15] Docs. 1719, 1753, 1763, 1773.

6

### B. Compassionate Release

Defendant shows that he has satisfied the administrative exhaustion requirements of § 3582(c)(1)(A), and this Court will therefore consider his request on its merits. He asserts several different reasons for which this Court should grant him compassionate release. This Court will consider each in turn.

### i. Defendant's Health and COVID-19

First, Defendant argues that he suffers from medical conditions that make him particularly vulnerable to COVID-19. Specifically, Defendant is 46 years old and contends that he suffers from high cholesterol, high blood sugar, hypertension, hypothyroidism, obesity, and GERD. However, courts have held that such commonplace maladies do not justify compassionate release.[16] Further, Defendant admits that he has contracted COVID-19 on more than one occasion without fatal consequence and that he has received the vaccine. "Courts have held that, once vaccinated, the efficacy of the COVID-19 vaccines preclude the argument that a prisoner's susceptibility to the disease is extraordinary and compelling for purposes of § 3582(c)(1)(A)."[17] Accordingly, Defendant has not shown that his medical conditions present an extraordinary and compelling reason for compassionate release.

---

[16] *See* United States v. Mondragon, No. 4:18-CR-132 (5), 2021 WL 951797, at *4 (E.D. Tex. Mar. 12, 2021) ("According to the CDC, 42.5% of the adult population in the United States is obese, 73.6% is overweight, and nearly half has hypertension. In addition, the CDC reports that 34.2 million people in the United States, approximately 10.5% of the population, have diabetes. Of those, 90 to 95% have Type 2 diabetes. Due to their prevalence, obesity, hypertension, and diabetes cannot be deemed "extraordinary" in order to merit compassionate release.").

[17] United States v. Gibson, No. CR 14-86, 2021 WL 3164176, at *2 (E.D. La. July 27, 2021).

7

### ii. Family Circumstances

Next, Defendant argues that his family circumstance warrants compassionate release. Specifically, Defendant contends that his family is struggling financially without his support and that the caretakers of his children, his wife and mother-in-law, are ill and struggling to care for his six children, ages 14 to 23. He alleges that his wife suffers from anemia and hypertension and suffered complications from a COVID-19 infection that have rendered her unable to work. He asserts that his mother-in-law is "very ill" and suffers from diabetes, asthma, high cholesterol, hypertension, and possibly cancer. He asks for release to serve as a caretaker to his children. He also notes that his youngest child and his older sister each have medical concerns and require surgery.

The application notes to the relevant policy statement in the Sentencing Guidelines provide that "[t]he death or incapacitation of the caregiver of the defendant's minor child or minor children" could amount to a "extraordinary and compelling reason" under the compassionate release statute.[18] "For guidance on what constitutes 'incapacitation,' courts look to the BOP's non-binding Program Statement for processing compassionate release requests."[19] The Program Statement provides: "'incapacitation' means the family member caregiver suffered a severe injury (e.g., auto accident) or suffers from a severe illness (e.g., cancer) that renders the caregiver incapable of caring for the

---

[18] U.S.S.G. § 1B1.13, cmt. n.1(C).
[19] United States v. White, No. CR 16-40, 2021 WL 1721016, at *4 (E.D. La. Apr. 30, 2021).

8

child."[20] In addition, "the Policy Statement requires the defendant to provide 'verifiable medical documentation of the [caregiver's] incapacitation.'"[21]

> Although Policy Statement 5050.50 does not bind courts considering a compassionate release motion filed by a criminal defendant, courts in this Circuit and elsewhere frequently consider the Policy Statement when assessing whether to grant a defendant compassionate release. Thus, where a caregiver suffers from an adverse health condition, but that condition is not severe enough to render the caregiver incapable of caring for the defendant's child, courts have generally denied compassionate release. Courts have likewise denied compassionate release where the defendant does not produce verifiable medical documentation demonstrating that the caregiver is incapacitated, as opposed to merely feeble.[22]

Here, Defendant has not provided medical documentation showing that his wife and mother-in-law are incapacitated. The only medical records submitted to this Court belong to Defendant's youngest daughter.[23] Further, in her letter in support of Defendant's release, Defendant's wife does not allege that she is incapacitated. She states only that she has chronic anemia that requires iron supplementation and that taking care of herself and the couple's youngest three children alone has been difficult.[24] The character letters submitted by other members of Defendant's family also reveal that Defendant's wife and children are living with his mother and father-in-law.[25] Accordingly, the record does not show that the sole caretaker of Defendant's children is

---

[20] Federal Bureau of Prisons, Program Statement § 5050.50, https://www.bop.gov/policy/progstat/50 50_050_EN.pdf, at 7.
[21] United States v. Barrios, 2022 WL 7265985, at *4 (W.D. Tex. Sept. 27, 2022) (quoting BOP Program Policy Statement 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g)).
[22] *Id.*
[23] Doc 1752.
[24] *Id.* at 7.
[25] *Id.* at 5.

incapacitated warranting his compassionate release. Further, the Government points out that Defendant has a pending immigration detainer, suggesting that he will likely be deported upon release and therefore not able to serve as a caretaker. Accordingly, Defendant's family circumstance does not present an extraordinary and compelling reason for release.

### iii. Sentencing Disparity

Finally, Defendant asks this Court to reduce his sentence in light of the changes in the law made by the First Step Act and disparities in sentence between him and his co-conspirators. At the time of his sentencing, 21 U.S.C. § 841(b)(1)(A) mandated a minimum sentence of 10 years for Defendant's crime. However, based up a total offense level of 40 and a criminal history category of I, Defendant's sentencing guideline range was 292 to 365 months. He was sentenced to 292 months.[26] Defendant later received a sentence reduction under 18 U.S.C. § 3582(c)(2) based on retroactive changes to the guideline sentencing range applicable to his crimes. Defendant's new guideline range was 235 to 293 months, and he was resentenced to 235 months on March 1, 2017.[27]

Defendant argues that if he was sentenced today, he would receive the statutory mandatory minimum of 10 years.[28] This Court disagrees. Defendant's guideline range far exceeds the applicable mandatory minimum. If Defendant was sentenced today, his guideline range would still be 235 to 293

---

[26] Doc. 923.

[27] Doc. 1384.

[28] Defendant also reasserts arguments regarding the calculation of the quantity of heroin attributable to him that were already addressed by the Fifth Circuit in his appeal. *See* United States v. Haines, 803 F.3d 713, 743 (5th Cir. 2015) ("Accordingly, the district court did not err in calculating the amount of heroin attributable to Iturres–Bonilla for purposes of the guidelines calculation.").

months pursuant to changes made by the Fair Sentencing Act. Because the First Step Act made these changes retroactive, Defendant has already received the benefit of those changes.[29] Defendant suggests that because the First Step Act reduced the mandatory minimums under 21 U.S.C. § 841(b)(1)(A) for defendants with one or two prior convictions to 15 and 25 years respectively, his nearly-20-year sentence is unjust in light of his lack of criminal history. In so arguing, Defendant confuses statutory minimums with sentencing guideline ranges. Defendant's lack of criminal history—resulting in a criminal history category of I—was taken into consideration in determining his sentencing guideline range. Defendant's guideline range was heavily influenced by increases to his base offense level for his leadership role in the conspiracy and for maintaining a premise for the purpose of manufacturing or distributing a controlled substance. To the extent that his sentence appears higher than his co-conspirators' sentences, it is because of these factors. Accordingly, there is no change in the law or disparity in sentence that warrants compassionate release.[30]

## CONCLUSION

For the foregoing reasons, the Motion is **DENIED**.

New Orleans, Louisiana this 16th day of February, 2023.

---

[29] Doc. 1384.
[30] Because this Court finds no extraordinary and compelling reason for release, it need not consider the factors of § 3553(a), including Defendant's rehabilitative efforts.


_____

**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**